We also have read the briefs and record excerpts. We have not necessarily gotten into the whole record, so we appreciate citations to the record when those are appropriate. The first case is number 2440244, United States v. Reyna-Zapata et al. And we'll hear first from Mr. Pena. Good morning. My name is Oscar Pena. I represent Rodolfo Reyna-Zapata. For purposes of context, Mr. Reyna-Zapata was the defendant who was arrested in the driver's seat of the vehicle, and he was the one that was found in possession of the key. So the first thing, this is couched as a sufficiency question, but I would suggest to the Court that there's almost a deeper philosophical question involved here as to whether or not possession can be an illusion. Here knowledge is not disputed, but our position is that Mr. Rodolfo Reyna-Zapata, although he was in possession of a key and although he was sitting in the driver's seat, he did not have dominion over the car or the firearms that were found in the car. The key that he was given, or rather the key that he retrieved from where you put the gas in the vehicle, only functioned to open the vehicle and allow entry to the vehicle. Our position is that occupancy of the vehicle alone, without being able to start it, does not constitute possession or dominion of the vehicle. Furthermore, the firearms that were in the vehicle were locked in a box to which Mr. Reyna-Zapata did not have the keys to. JUSTICE KENNEDY Also, is there a photograph or other description of that box? It seems to me whether he had possession of the car is important if he didn't have possession of the box, but if he had possession or control over the box, that's good enough. What do we know about that box? Is it something these three people, if they couldn't get the car started, could have gotten out of the trunk and hauled off and broken into later? MR. REYNA-ZAPATA Well, yes, but the car was in the box. JUSTICE KENNEDY What's in the record about the box? MR. REYNA-ZAPATA That it was locked for operation. JUSTICE KENNEDY I know. Is there a picture? Is there a description? All I know is it's a locked box.  REYNA-ZAPATA It was a box that was locked. It was large enough to contain a few firearms in it, and it was placed in the trunk, half in the trunk, and half of it protruded into the passenger compartment of the vehicle. That's all I, that's all we know about the box. JUSTICE KENNEDY In other words, there is no photograph or other description of it, there is no photograph or other description of the box?  REYNA-ZAPATA No, Your Honor. JUSTICE KENNEDY I'm sorry. JUSTICE SOTOMAYOR That's okay. Well, following on what Judge Southwick said, but the, he and the other defendants recognized it as being a gun box, right?  REYNA-ZAPATA Yes, that's correct. We're not denying knowledge of the contents of the box. We are only arguing that the defendant was not, would not have been able to reduce the contents of the box to his control. I suppose they could have run off and then broken into the box at a later time, but the vehicle was disabled as well. So here we have a situation where not only did they not have control of the space where the box was contained, but they also could not get into the box. It's like being given an item that is locked in a safe that you don't have the combination to. I think that it's very clear that that means that you cannot exercise dominion or control over it. JUSTICE SOTOMAYOR The other issue that I want to bring up is this issue in Toro about that. REYNA-ZAPATA Well, suppose, I mean, suppose that the confidential fellow had, instead of procuring a car, they were going to meet at a certain location. He was going to bring the guns and then that was going to be right near where the victim was supposed to be. And he brings the guns and they want the guns. He said, wait a minute, wait till we get to the back door. And so they start walking 100 yards or whatever. And they're clearly headed toward where the victim lives. And they get arrested at that point. Wouldn't that be enough to be their constructive possession of the weapons? JUSTICE BREYER If the gun, forgive me, just so I understand, if the guns were still in the possession of the informant? REYNA-ZAPATA Correct. JUSTICE BREYER I would suggest that if the guns were still in the possession of the informant, even if they walked together as a group to the back door where the crime was going to take place, that that would not constitute possession. REYNA-ZAPATA Well, it's, it may be a weird hypothetical, but it seems to me it's somewhat analogous. JUSTICE BREYER Well, I know there's case law involving the surrender of the firearms from the government to the defendant. But here, our argument is that that did not occur. My time has ended, so I will, unless there's any questions. JUSTICE GINSBURG All right. No, sir. Thank you.  JUSTICE GINSBURG Okay. Mr. Lozano. REYNA-ZAPATA Good morning, Your Honors, and may it please the Court. My name is Frank Lozano. I represent the appellant, Mr. Gregorio Gonzalez Barragan. We respectfully request this Court to vacate the District Court's imposition of the sentencing enhancement under 18 U.S.C. 924C and remand the case for sentencing, as the enhancement was erroneously based on the incorrect finding of constructive possession of these firearms. Importantly, the government relies on the knowledge or their belief that the co-appellants had knowledge of the guns and therefore had constructive possession over them. However, the record, and to answer Judge Southwick's point, ROA 6368 contains the factual findings of where the box was in the vehicle. They were located in a locked box, non-transparent, no ability to see into the box, no ability for the co-appellants to know what's in the box. JUSTICE KENNEDY Is there enough of a description that it's a gun case? Do we know that much about the box? REYNA-ZAPATA The government describes it as a case, a black case, that protrudes into the vehicle. However, there's no evidence that the appellants could have known or should have known that the box contained any firearms within it. Constructive possession requires that the co-appellants... JUSTICE KENNEDY Wasn't the evidence shown that they thought that was what was in it? REYNA-ZAPATA Excuse me? JUSTICE KENNEDY Isn't the evidence almost undeniable that they thought that's what was in that box? REYNA-ZAPATA So the government contends that the confidential source told co-appellants that they would be driven to a car and guns. They weren't ever told that they were driven to a car with guns inside. They were not shown the guns in the car, and the knowledge of the confidential informant, as we see in the case of U.S.A. v. Cervantes and U.S.A. v. Escajada in this Fifth Circuit, shows that the knowledge of a confidential source cannot be imputed to the co-appellants because... JUSTICE KENNEDY Wait a minute. Did the judge find that all of the appellants knew the firearms were inside the car? REYNA-ZAPATA No. The judge did not in the trial court's order. The finding was that the, in ROA 118, I believe, that they had the power and intent to control the firearms through the CS, CS referring to confidential source, before they ever arrived at the undercover car. So the way that the trial court arrives at their knowledge and their constructive possession of the guns is through the CS. That's the finding that the trial court makes. They arrive at that through the confidential source, but we know that you cannot impute the knowledge from the confidential source to the co-appellants because the confidential source is not part of the conspiracy, because they do not have the same requisite intent as the co-conspirators. They're not trying to commit the crime. Instead they're trying to frustrate the crime. So you cannot tie them in with the co-conspirators. You cannot impute their knowledge. JUSTICE KENNEDY All right. Are you talking about Pinkerton liability or are you talking about constructive possession? REYNA-ZAPATA Constructive possession requiring knowledge in order for there to be the ability to reduce the object to actual control. So in order to have constructive possession, it's not an intent crime. There has to be actual knowledge that the co-appellants have. JUSTICE KENNEDY But, counsel, we start from the premise that we're not talking about actual possession, we're talking about, quote, constructive suggestion. The focus really is on the word that precedes that, the qualification of possession. We're not talking about full possession. REYNA-ZAPATA Correct. JUSTICE KENNEDY Indisputably, they did not have full possession. REYNA-ZAPATA They did not have actual possession. And constructive possession, as defined in Fifth Circuit precedent, is the ability to reduce an object to its actual possession. JUSTICE KENNEDY I'm just suggesting to you that the beginning of our analysis is finding something that does not exist, in fact exists. And factually, we know that they couldn't have a key to the thing, so they couldn't get it. Nonetheless, because their criminal conduct has proceeded to that extent, then we are going to find them guilty of what they did not ultimately accomplish, but not because they didn't try. So I just suggest to you that that's the overarching background against which we answer this somewhat inscrutable question of constructive possession. REYNA-ZAPATA Correct, Your Honor. However, their intent to commit the underlying crimes of kidnapping and murder, that's a different intent than an intent to possess a firearm. So that possession cannot be transferred to their intent to possess the firearm itself. And in fact, it would lead to an absurd result if anyone who had an abstract knowledge of potentially there may be some guns in the vehicle, a gun is very different than a drug, for instance, where any drug is illegal, a gun itself . . . JUSTICE SOTOMAYOR Here's the finding of the district court. When the CS took defendants to the undercover car, defendants all knew that firearms were inside. Now, that's a finding they made after the bench trial. REYNA-ZAPATA That's the finding the court made, and our position is that that finding is erroneous because no rational trial fact, there's no evidence that that was the case. The trial court is imputing the knowledge from the CS to make that claim. And there's a distinction where the CS tells them, I'm going to take you five days prior to a car and to guns, not to a car with guns. And there's a distinction there. JUSTICE SOTOMAYOR What's the best case for your position? REYNA-ZAPATA Our best case is U.S.A. v. Tobias. JUSTICE SOTOMAYOR What? REYNA-ZAPATA U.S.A. v. Tobias, where sting operation, if the government assembles everything, cannot be imputed to the . . . JUSTICE SOTOMAYOR Oh, the assembly, yeah, right. REYNA-ZAPATA Yes. JUSTICE SOTOMAYOR Okay. REYNA-ZAPATA Thank you, Your Honor. JUSTICE SOTOMAYOR Thank you, sir. REYNA-ZAPATA And you all have . . . you've all reserved time for rebuttal. Okay, Mr. Figueroa. JUSTICE FIGUEROA May it please the Court, good morning. REYNA-ZAPATA Now, I thought your . . . isn't your client the one who did not request oral argument? JUSTICE FIGUEROA That's correct. REYNA-ZAPATA Okay. JUSTICE FIGUEROA So . . . REYNA-ZAPATA I guess it's fine. JUSTICE FIGUEROA I can proceed, or . . . REYNA-ZAPATA Yes, sir. JUSTICE FIGUEROA Okay. REYNA-ZAPATA Just clarifying. JUSTICE FIGUEROA That's fine. The appellant, in this case my client Martinez Padilla, never exercised dominion or control over the vehicle, and much less the firearms. There is no evidence that the appellant knew where the guns were placed in the vehicle. He didn't know there was going to be a box, locked box, underneath the carpet. We had . . . there was no evidence as to any directions or information that my client knew where the guns were going to be placed. He was given . . . the keys were given to a co-defendant. This does not create possession. The vehicle was not operable. They never turned it on. The government alleged . . . JUSTICE KENNEDY Let me ask you . . . you alluded to this just a moment ago. The exchange Judge Jones was having with your immediate preceding attorney says the district judge did not have any evidence that these three individuals knew there would be guns in the car. Would you agree? We'll certainly hear from Ms. Mannis, if I'm saying your name right. Was there no evidence in the bench trial where the C.S. . . . it was an acknowledgment that they were told that the guns would be in the car? MR. JONES They were not told. They were . . . they just requested it, and they were just following orders to go pick up the car. They didn't know where the guns would be placed. If at all that they would be there. JUSTICE KENNEDY All right. Thank you. MR. JONES Because in addition, it took days and days for them to set it up, and they would give them . . . tomorrow be it, and then you can pick them up, and it just kept being delayed. So there is no evidence that actually the guns would be there, in my opinion. The vehicle had never been seen by the defendants. They didn't know . . . had never driven it, didn't know how to operate it in the sense that they . . . it was not within their instructions. There were sicarios basically being told, you do this, do that, and there's no evidence to that. The evidence . . . the defendant must know of and have access to the nearby guns to establish possession. In order to have access to the locked box, required the government to unlock and open the box. Mere proximity or presence near the firearms is not constructed possession. In the case of Caballero, a person has constructed . . . MR. JONES If the box had been unlocked, in fact, it simply wasn't locked, that was the outcome.  JONES They still hadn't opened it. Even if it was unlocked, they still have to go there. They're in the academy parking lot, I don't think they're going to go in the back and open the box. MR. JONES All facts remain the same except one little fact. It was not locked. The box was not locked. MR. JONES I don't think it changes anything because it's still . . . the defendants didn't know where the weapons were going to be . . . were there, if at all.  WARREN Well, they did know they were going to meet at a certain location that they were going . . . that it was time to do the hit, right? So they had reason to believe that . . . I mean, the judge finds two times in his remarks that they knew the guns were in the car. MR. JONES They were informed that the guns would be in the car, so . . . WARREN Well, and then, of course, they both . . . they all opened the doors to the car and they could see the case there.  JONES There's no evidence as to that, that actually the defendants saw the case. There's evidence that they didn't know where the weapons were, and the case was half in the trunk and half protruding to the back seat. MR. JONES They asked for two long guns, and the box, as I understand the facts, were a long box, not just a little square box. So that . . . if you're looking for the long guns, that's where you're going to look, right, that box, right? WARREN That's correct. But my client was barely opening the door to the car when they were . . . MR. JONES But you say that even if they were unlocked, it would not change the fact. WARREN I don't think so, because they didn't have access to it, because they were just merely getting into the car, and the cars were under the control of the C.S. and the government. The guns were not loaded, and the vehicle was disabled. MR. JONES Your argument ultimately is simply that because the law enforcement had control over the overall situation, they weren't going to get away with it. WARREN That's correct. MR. JONES But does that really answer the question of constructive possession? WARREN They never had access to them. It was being controlled by the government at all times, the box, the vehicle, the C.S. So at what point did they actually have control and dominion over the weapons and the vehicle? And there's no evidence, because they never did. MS. MANNES Good morning, Your Honors, and may it please the Court. Audrey Mannes on behalf of the United States. There are three bases on which this Court can affirm the defendant's convictions for possessing firearms in furtherance of their crimes. First, as the District Court found and has been discussed already much this morning, substantial evidence demonstrates that each of the defendants constructively possessed the firearms. Second, the other two participants in the scheme, the confidential source and this man named Takayo, actually and constructively possessed the firearms, and under Pinkerton, the defendants are liable for their co-conspirators' possession. And third, in a similar but distinct vein, the defendants aided and abetted each other's possession, Takayo's constructive possession, and the C.S.'s actual possession. I'll start with the defendants themselves constructively possessing the firearms, because that has been the focus this morning. As the District Court found, the defendants had the power and intent to exercise control over the firearms and planned their disposition and delivery through the C.S. I know much of the focus has been on the vehicle itself this morning, but this conspiracy started days earlier, when the defendants met together in a parking lot with the confidential source and Takayo. And Takayo told them, hey, the co- How did they have the power if in fact it was locked? Well, that's when we get to the vehicle, and they do have the key to the vehicle. At that point, they do know that the firearms are in the car. Back up. Excuse me. You go ahead. That the actual control of the car itself, when they could take control of the car itself, then that would be enough. Absolutely, Your Honor. And this court has- How would that play out? How would they have control over the car? So they had the key to the car, and this court has held it- The key to the car, it's surrounded, the place is surrounded. I mean, they were never going to drive away from there. No, the car was disabled, and that was for officer safety. And this court has found constructive possession, even in instances where the defendants had brief dominion or control over the contraband or the item, but for officer safety, law enforcement- What was the consequence of our ruling on this thing, in terms of sentencing? Six or ten years extra, or whatever. I believe it's five years. It's the gun count. Yes. It's five years for each defendant. I don't remember the years. What was it? Five years for each defendant, Your Honor. And each of them already had ten years or so, right? That's right. I believe that at least two of them had 292 months on the conspiracy count, and one had 180 months on the conspiracy count. Also, you said, before Judge Higginbotham was asking questions, that the evidence is that each of them knew the guns were in the car. We had exchanges with opposing counsel on that. Did something come out in the bench trial other than what seems to me what we were discussing with them, which is they know they were going to be provided guns, but they were not told- I mean, it could be this was the intermediate step. They were going to get in the car, then they're going to be told where to go to get the guns. What do we know that's in- Was that the bench trial? There would be a reasonable inference they knew the guns were in the car as opposed to when the car was driven ten miles away, that's where the guns were. I'll point, Your Honors, to a couple of the stipulated facts that were entered as part of the bench trial. First, in R.O.A. 81, and I'm referencing Reina Zabata's R.O.A. for ease here, paragraph E, when they meet four days in advance of actually going to the vehicle, Takayo tells Reina Zabata and Gonzalez-Barrigan that the C.S. will be their point of contact and would provide them with a vehicle and toys. Then, on September 13, 2021, this is in paragraph I at R.O.A. 82, the C.S. has a phone call with Reina Zabata. The C.S. informs Reina Zabata that the C.S. would be picking up the defendants to provide the car with the firearms already inside the car. That's a phone call, right? That is a phone call, yes. And there are multiple phone calls leading up in that day and then leading up to that day on September 13. That was if the defendants think they had possession where they had the car. The defendants certainly- In fact, did they? The defendants certainly thought they had possession. And they did have possession even before they got to the car. And that's what the district court found, is there was constructive possession in the days leading up to it because the defendants, along with Takayo, the leader in this conspiracy, could control the movement and disposition of the firearms. Takayo was able to direct the C.S. where to pick up the firearms and the C.S. in fact was able to go to them- The car just shifts to the car keys, not the lockbox. Certainly the car keys are important, but my argument is they had constructive possession days before they even got to the car. And it's when the guns are moving around- I was going to say that's the logic of your position, that they were in constructive possession before they ever got near the place. Sort of what you call wishful possession. That's wishful possession. But that's what the district court found, is that they were in constructive possession because they had that control in the days leading up to it. Because this is a conspiracy with not just these three, but also with Takayo and then there's this confidential source involved. But the court finds two times they knew the guns were in the car. And you said the telephone conversation said the guns would be in the car. So that's all she wrote. That's true, yes. And then as soon as they approached the car, as your honors noted, they can see a firearms case. It's not just a box. It's noted in the stipulated facts as a firearms case. They can see it protruding from the back seat in plain view. But do you agree, at least your recollection, there's no picture of this? There is no picture of it. That is correct. So a purchase made for the purposes of storing firearms is what you think the evidence indicates this box was? The ROA specifically, the stipulated facts, paragraph L, refers to it as a locked firearms case. It's not bolted to the floor of the car or truck. And even if they couldn't make the car move because it had been disabled, could have picked up the box and carried it off? Certainly, I agree with Mr. Pena that they could have picked up the box and ran off with it. And that, again, is a reason why the box needed to be locked for operational safety. I know that that's a concern. It's a concern that this court has had. And emphasized in United States v. Posner and United States v. Toro, it's a concern that the Supreme Court has had, that officer safety is something that needs to be considered. Your strongest argument is simply that possession of the car is enough, period? Yes. And the court's previous cases hold that. It's possession of the key and then certainly access into the car. Are all those cases really involving, once you get the key, you have possession of the car, are all those involving vehicles that you actually can control that have not been disabled? Do you have a case where the vehicle has been disabled and the key was enough? The closest case that I have for you is United States v. Posner out of this court. In that case, the defendant got the key and was able to get into the car, and then the court references an attempt to start the car. It does not say whether the defendant was able to or not. It sounds like that's wishful use of the precedent. It may be wishful thinking, but that's the closest I have for you. Okay. So I'm a little worried about us finding that this is control of a car when you can't control it. You can't control it as a car. You can control it as a stationary object, perhaps. You have dominion over a home, and you can't move a home. Correct. So I'm wondering if you really are in the car category or in the storeroom of some sort that the defendants can't enter. It could be that that certainly is a factor for this court to consider under the common sense, consider all facts approach, which the court has endorsed in constructive possession cases. It's no different from saying you have constructive possession over the drugs when the confidential source has brought the drugs and the cops are all around you, and there's no question you're never going to actually possess the drugs, but you put your hands on them, and that's it. That's, again, that's all she wrote. That's right, and that's exactly what happened in United States v. Toro. The defendant put a kilogram of cocaine in his briefcase, and the cops arrested him. So what about the Pinkerton theory? So under Pinkerton, the co-conspirators are liable for the acts of their compatriots so long as the act was reasonably foreseeable and it was done in furtherance of the conspiracy. And I'd like to... You can't, the confidential source can't conspire, right? I agree, Your Honor. The confidential source cannot be a conspirator, but certainly Takayo is. And the defendants knew that they were going to be provided with toys, guns. Takayo told them that. Takayo was the one who was able to direct the disposition of the firearms. He knew initially where they were, and he sent the confidential source to get them. Counsel, let me ask you, what was the material that this box was constructed of? What are we talking about when we say a box? That could be anything from a steel container to a local HEB box. Again, Your Honor, the record refers to it as a firearms case, and I understand a firearms case usually to be metal and usually to have the ability to be locked. I'm sorry, this was a metal box? I understand a firearms case to be metal, but the record is not specific. What does the record show? The record says the stipulated facts refer to it as a firearms case, and the PSR also refers to it as a firearms case. And the defendants don't challenge that? The defendants have not challenged that. In fact, they agreed to the stipulated facts. Going back to the Pinkerton liability that Judge Jones was asking about, there's also no question that Takayo's movement of the firearms in those early days of the conspiracy was done in furtherance of the murder for hire and the drug trafficking, the overall scheme. But isn't one of the problems with that, and you'll show me why it's not really a problem, is there's no evidence that the guns that he was involved with, Takayo, were the same guns that were in the car later? The record is unclear on whether the guns that Takayo directed the CS to retrieve were in fact the same guns that ended up in the vehicle of hire. So where does that leave the Pinkerton argument? I don't think that changes my argument at all, because my argument is the defendants constructively possessed in the early days, Takayo constructively possessed in the early days, and the CS actually possessed the four firearms that he retrieved from whatever house Takayo directed him to. And though the CS cannot be a conspirator, the defendants can be liable for aiding and abetting the CS's actual possession. And that brings me to my third point. Mr. Gonzalez-Berrigan cited this court's recent case in Cervantes, which is 107 F. 4th, 459. There the court said an aiding and abetting conviction for a completed substantive offense may stand even if the principal is a government agent with no guilty intent, and therefore no substantive crime was actually committed. So this means that the CS could have actually possessed the firearms, and the three co-defendants are liable through an aiding and abetting theory for the CS's possession. What if there were no firearms there, but it just led them to believe that there were firearms there? If all the facts are the same, but the locked box in the vehicle is actually empty, I think we can still show, again, because there was constructive possession in the early days, when the actual firearms are moved around by Takayo via the CS, and through the defendant's instructions of we want four firearms, and, again, through Pinkerton liability and an aiding and abetting theory. So even if the locked box had been empty, the government would be able to make its case. But the case would not be because of what happened at the car. Correct. It would be because of the earlier activities. The car simply strengthens the constructive possession case. But it's clear that the firearms were in the box. Yes. That is undisputed. The defendants didn't know that. The defendants, though, were told in advance that there would be firearms in the vehicle.  And so they fully anticipated that there would be firearms in the vehicle. If there are no further questions from the court, I'll rest on my brief. Thank you. Thank you. All right. Mr. Pena. Please, the court. Very briefly, I want to make clear that Reina Zapata is not arguing that he did not have knowledge. He's only arguing, his argument is very specific, as to he was not able to control the firearms or the vehicle in any way. Then this other issue that was brought up about Toro and officer safety. The government said that even brief dominion is enough under the Fifth Circuit jurisprudence. But here, Reina Zapata did not even have brief dominion. And then the other thing that is troubling to me about this officer safety argument is that there were seven counts in this indictment. They had them already on six of them. They went out of their way, specifically, to add five years to the sentence by setting up a 924C stick. But your guys are hit men, so who knows how many murders they... I mean, this is... The government has to do what's necessary to protect the public. I don't think adding on a 924C to all the other convictions that they already had evidence of is necessary. I think they went out of their way to do it and created a situation, and are now saying, well, it's a dangerous situation, we have to lock them up. What difference does it make? Well, I don't think... Well, I'm addressing the argument of officer safety. I think that they went out of their way to create a dangerous situation. They shouldn't be allowed to rely on officer safety because of that. I think they already had enough evidence to convict them on the six other counts. The government just wanted to tack on five years to their sentence. That's the government's prerogative, the prosecution, isn't it? Yes, and then, let me see. This idea that they could have run off with it, I suppose it's technically possible, but they were, in fact, surrounded. But I'm more focusing on the point of the box being locked. They were not able to move the car and they were not able to open the box. That's all I've got. Thank you. All right, thank you. All right, Mr Figueroa. I'm sorry. May it please the Court, Mr Lozano. Briefly, Your Honours, in these two points, firearms case, assuming in argument that it was a firearms case, that doesn't mean that there necessarily were firearms in the case. You can place other objects in a firearms case. It's not dispositive that the defendants had knowledge that there were firearms in the case. Secondly, to the stipulation of facts points, the government points to subsection I on the stipulation of facts that the CS informed the defendants that they were going to provide a car with firearms. The government then claims that five days prior, they've been talking with a co-conspirator, this person named Takayo, that there were these firearms. There's no indication, there's no evidence presented at trial that these firearms are the same as the firearms that are discussed by the confidential informant at five days' later date. And again, they're stringing them along in this case. I mean, why do you have to identify them as the very same firearms? The reason, Your Honour, is because in the cases that the government cites Prudhomme and Orozco, where there's drugs or other firearms, in all those cases, the defendants have the ability to inspect and to accept possession of those drugs or of those firearms. If you do not give the defendants the ability to accept and therefore you preclude them the ability to walk away from the conspiracy or to walk away from that specific part of the conspiracy, they don't have possession. They don't have constructive possession because they're not given the choice. They're not given the ability to negate it. That would turn this possession into a strict liability crime, which we know would lead to absurd results. Possession of a gun is not a strict liability. There needs to be knowledge. There needs to be ability for them to see the guns or at least know dispositively that they're in the locked box. And the trial court erred because there was no evidence showing that there necessarily were guns in the locked box. Thank you. Okay. Thank you. And finally, Mr. Figueroa. May it please the Court. The government cites Posner about the key. In that case, it was the key. The defendant entered the vehicle, inspected the marijuana, and attempted to start the vehicle. In that case, they did find constructive possession. In this case, there's nothing about inspecting, getting on, turning on the vehicle, checking for the contraband, in this case the firearms. As to the Pinkerton matter, the co-conspirators in this case, they have to prove that there was possession. If there's no possession from the beginning, then there's nothing to flow down to our clients. And as to the Tocayo, we have no evidence as to who provided the weapons. Was it the government or was it Mr. Tocayo? We don't know. If Tocayo didn't have possession, then our clients don't have possession either. So we ask the Court to grant our dismissal of the charges in this case, Your Honor. Thank you. All right. Thank you. All right, gentlemen. Two of you are court appointed, and the Court appreciates your service to your defendants and to us. So thank you very much. We'll take the case.